455 P.2d 856

Betty LANG, Lavern Tomchak, and George Nukaya, Plaintiffs-Appellants,

v.

BOARD OF TRUSTEES OF JOINT SCHOOL DISTRICT NO. 251, JEFFERSON AND MADISON COUNTIES, Idaho, and Kenneth Scott, Peggy A. Jernberg, Earl G. Jones, Eldred Lee, and Laudy Tomchak, the Members of such Board, Defendants-Respondents.

No. 10301.

Supreme Court of Idaho.

June 19, 1969.

Denman, Reeves & Oksendahl, Idaho Falls, for plaintiffs-appellants.

T. Harold Lee, Rigby, for defendants-respondents.

DONALDSON, Justice.

Plaintiffs (appellants) brought this action for a writ of mandate against defendants (respondents) Board of Trustees of Joint School District No. 251 (Jefferson and Madison Counties) and the members of such board to compel them to restore the Roberts High School to Roberts, Idaho. They alleged that defendants discontinued the "Roberts High School," without giving proper notice.

An alternative writ of mandate was issued commanding the School Board to restore the high school to Roberts or to show cause why they should not so act.

Defendants answered, stating five defenses, the first of which was that no notice was required under the Idaho Statutes, prior to making changes in "Roberts High School."

Without hearing evidence, and based on the application for a writ of mandate, the first defense in the answer, and certain stipulations of fact, the court made and entered a memorandum decision. Included in the memorandum were findings of fact, conclusions of law and judgment dissolving the alternative writ of mandate.

According to the trial court's findings, prior to creation of Joint District No. 251, Independent School District No. 3 maintained two schools in Roberts. One contained grades one through six. The other,

"Roberts High School," housed grades seven through twelve. November, 1966, defendants devised a plan to reassign students to different schools in the joint district. Under the plan, students attending the ninth through twelfth grades at "Roberts High School" were to be educated at other schools in the area, none of which was more than thirty miles by all-weather road from Roberts. Students in grades seven and eight were to be taught at "Roberts High School," including students from Roberts and students who otherwise would have attended Midway Junior High. Prior to implementation of the plan, no notice of discontinuance, as defined in I.C. § 33-511, was given. Notice, according to the district court, was not required, since the applicable statute stated that discontinuance is not considered to have taken place so long as a school of any type be maintained at the old location. Finally the court held the defendants had not abused their discretion in so acting without notice.

The issue on appeal is whether the action of defendants constituted a discontinuance of a school, requiring prior notice of such action to be given.

■ The noun "school" is subject to many and varying definitions, depending upon the context in which it is used. Webster's Third New International Dictionary (1967) lists over twenty definitions and sub-definitions. As the term is used in the instant controversy, a school is an institution, maintained at public expense, for instruction in the basic areas of learning. This course of study generally spans a period of twelve years, each year encompassing one class or grade. An individual school ordinarily includes some, but not all, of the twelve grades. The current version of I.C. § 33-511 states:

"33-511. *Maintenace of schools.*—The board of trustees of each school district

shall have the following powers and duties:

\* \* \* \* \* \*

3. To discontinue any school within the district whenever it shall find such discontinuance to be in the best interests of the district and of the pupils therein. For the purposes of this section, discontinuing a school shall mean no longer maintaining a school of any kind at the same location, except in the case of secondary units as herein provided.[1]

When any school proposed to be discontinued is one which was operated and maintained by a former district now wholly incorporated within the boundaries of the district operated by said board of trustees, and, immediately following reorganization and the dissolution of said former district such school has been continuously operated and maintained at the same location by the presently organized district, the board of trustees must first give notice of such proposal not later than the first day of July next preceding the date of the proposed discontinuance. Such notice shall be posted, and published once, in the manner provided in section 33-401, and shall identify the school proposed to be discontinued.

If, not later than the first day of August following the posting and publishing of the notice of discontinuance, five (5) or more qualified school district electors residing within the school district shall petition the board of trustees for an election to be held within the school district on the question of discontinuance of that school, the board of trustees shall forthwith order an election to be held within fourteen (14) days of the date of said order, and shall give notice of the election.

1. "\* \* \* except in the case of secondary units as herein provided" refers to a requirement that notice be given when a secondary unit (grades seven through twelve or a combination thereof), proposed to be closed, is more than 30 miles by all-weather road from the "attendance unit" to which students are to be transferred. The Roberts School, however, is less than 30 miles from such "attendance unit."

Notice of such election shall be posted at or near the main door of the school proposed to be discontinued and at or near the main door of the administrative offices of the school district, and shall also be published in one (1) issue of a newspaper printed in the county in which is situate the school proposed to be discontinued. The notice shall state the date the election is to be held, the place of voting, and the hours between which the polls shall be open. In addition, the notice of election shall describe the area of the school district and shall identify the school proposed to be discontinued; and it shall state that only qualified school district electors residing within the school district may vote on the question of discontinuing the school.

The election shall be held within the school district and there shall be submitted to the electors a ballot containing the proposal:

For discontinuing the school located at _____,

Against discontinuing the school located at _____.

If two-thirds (⅔) of the qualified electors, hereinabove defined and voting in the election, shall vote against discontinuing that school, then said school shall not be discontinued; and no proposal to discontinue the same school shall be made by the board of trustees of the district within nine (9) months after the date of the election. * * *"

By statute, then, discontinuing a school means "no longer maintaining a school of any kind at the same location * * *." (emphasis supplied).

It is evident from the stipulated facts that a school "of any kind," as we have defined school, still is maintained at the "same location." The seventh and eighth grades are now taught at the "Roberts High School." The fact that more or different grades were taught at "Roberts High School" in the past does not mean that the board action constituted a discontinu-

ance of the school. See Cameron v. Lakeland Class A School District No. 272, etc., 82 Idaho 375, 353 P.2d 652 (1960) (somewhat analogous situation decided under an earlier, more restrictive statute). Since the school was not discontinued, no notice was required by I.C. § 33–511.

Appellants have cited a number of Idaho cases in support of their contention that notice ought to have been given under the facts before us. Wellard v. Marcum, 82 Idaho 232, 351 P.2d 482 (1960); Knight v. Class A School District No. 2, 76 Idaho 140, 278 P.2d 991 (1955); Andrus v. Hill, 73 Idaho 196, 249 P.2d 205 (1952); Robbins v. Joint Class A School District No. 331, 72 Idaho 500, 244 P.2d 1104 (1952); People ex rel. Thompson v. Cothern, 36 Idaho 340, 210 P. 1000 (1922). These cases were decided under earlier statutes, all of which more severely restricted the powers of the local boards of trustees than does the present statute, I.C. § 33–511. The cases, therefore, do not establish a precedent binding upon this court.

Appellants argue that the trial court erred in finding that "Roberts High School" housed grade seven prior to creation of the joint school district. The stipulated facts do not show conclusively that grade seven was housed in the "Roberts High School" prior to reorganization of the school districts. Even if the seventh grade had been housed elsewhere at such earlier date, the outcome of the case would not be changed. The error at most was harmless and consequently not a proper ground for reversal. I.R.C.P., Rule 61.

At oral argument, appellant questioned for the first time the constitutionality of the two-thirds voting requirement of I.C. § 33–511. Since notice and election were not required in this instance, resolution of the constitutional issue would be premature. State v. Clark, 88 Idaho 365, 399 P.2d 955 (1965).

Affirmed. Costs to respondents.

McFADDEN, C. J. and McQUADE, SHEPARD and SPEAR, JJ., concur.